IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| YORK BUILDING PRODUCTS, CO., INC., | : : | 1:10-cv-1677 |
| Plaintiff, | : : | |
| | : | Hon. John E. Jones III |
| v. | : : | |
| ROBERT M. MUMMA, II, | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

**November 30, 2012**

On September 18, 2012, a bench trial was held in this matter. At the conclusion of the trial, the Court issued a post-trial briefing schedule. The parties have now submitted proposed findings of fact, conclusions of law and argument. (Docs. 63 and 64). Accordingly, this matter is ripe for our review and disposition. For the reason that follow, the Court finds for the Defendant, Robert M. Mumma, II ("Defendant" or "Mumma"), and shall enter judgment in his favor.

I.     **FACTS**

Plaintiff York Building Products Co., Inc. ("Plaintiff" or "York"), is a Pennsylvania corporation engaged in the business of providing materials such as sand, gravel, stone products and bituminous asphalt to various consumer

1

companies. Defendant Mumma is an individual, residing in Florida, who owns both McDermitt Concrete, Inc. ("McDermitt") and Kimbob, Inc. ("Kimbob").[1] Both McDermitt and Kimbob are general contracting companies and have historically purchased supplies from York since the early to mid-1960s. McDermitt and Kimbob share offices and sometimes share employees as well. Thus, McDermitt employees would perform work for Kimbob and vice versa. However, York provided products to McDermitt and Kimbob under separate accounts and each company was invoiced separately by York.

In 2009, York frequently placed the McDermitt account on hold, meaning that York would hold shipments of product until McDermitt made payments on outstanding invoices. In July of 2009, York requested that McDermitt execute a credit application with a personal guarantee by Mumma. York requested the execution of this credit application and personal guarantee because McDermitt had begun requesting that York ship more product to it that York typically had in the past, thus triggering a request for a higher credit limit.

In July of 2009, York's credit manager, Bonnie Patterson ("Patterson") faxed the proposed credit application and personal guarantee to Danielle Geary ("Geary"), a bookkeeper in McDermitt's office. As noted, the most salient portion

---

[1] This action is brought pursuant to the Court's diversity jurisdiction. 28 U.S.C. § 1332.

of the credit application was the requirement of a personal guarantee of Defendant Mumma, the sole principal of McDermitt. Upon receipt of the credit application and personal guarantee in McDermitt's office, it was then directed to Jonathan McClymont ("McClymont"), who was then employed as the controller or accountant for Kimbob.[2]

Thereafter, in September of 2009, York again put the McDermitt account on hold as a result of nonpayment and a failure to provide the executed credit application and personal guarantee. McClymont spoke with Patterson about the hold status and the credit application and suggested that he could execute the credit application and personal guarantee as the controller for McDermitt. Patterson advised McClymont that Mumma needed to sign the credit application and personal guarantee himself.

On September 25, 2009, McClymont and Mumma engaged in a telephone call during which McClymont testified that he told Mumma that York would not release the hold unless Mumma signed the credit application, including the personal guarantee. During this call, McClymont suggested to Mumma that McClymont could sign Mumma's name to the credit application and personal

---

[2] At the time of the factual panapoly giving rise to this case occurred, McClymont had only been employed by Kimbob for about 3 weeks.

guarantee. Mumma responded to McClymont, in what the McClymont intimated was an incredulous or questioning tone, "You would sign my name?" to which McClymont replied, "Yeah, I can sign your name." McClymont thereafter signed Mumma's name to the credit application and personal guarantee and faxed a copy of the same to York. The original document was kept by McClymont and stored in Kimbob files and was never requested by York.

At trial, Mumma testified that he did not recall ever discussing with Patterson or anyone at York about a new credit application or personal guarantee with McDermitt, although he did recall discussing McDermitt accounts payable with her. Mumma also testified that he did not authorize McClymont to sign the McDermitt credit application and personal guarantee during the September 25, 2009 phone call. It was Mumma's impression that the business relationship between the companies continued to operate under a credit application that had been in force when Mumma took control of McDermitt in 1987.[3]

Following receipt of the faxed copy of the executed credit agreement and personal guarantee, York provided product to McDermitt totaling a principal sum of $58,000. McDermitt failed to submit payment to the Plaintiff for the product

---

[3] Although not expressly testified to by any witness at trial, it is nonetheless evident that the prior credit application did not contain a personal guarantee signed by Mumma.

4

and Mumma refused to pay York for the same. This action for breach of contract followed.

## II. DISCUSSION

It is well-established under Pennsylvania law that a personal guarantee must be in writing and "signed by the party to be charged therewith, or some other person by him authorized." 33 P.S. § 3; *Donaldson v. Bernstein*, 104 F. 3d 547, 557 (3d Cir. 1997). It is undisputed by the parties that McClymont, not Mumma, signed Mumma's name to the credit application. Thus, Mumma can only be bound by McClymont's signing of Mumma's signature to the credit application and personal guarantee if McClymont was acting as Mumma's agent with respect to this transaction.

There are four forms of agency under Pennsylvania law. They are agency by (1) express authority; (2) implied authority; (3) apparent authority; and (4) estoppel. *SEI Corp. v. Norton & Co.*, 631 F. Supp. 497, 500 (E.D. Pa. 1986). Plaintiff contends that Mumma gave McClymont express authority to sign the personal guarantee, thus the personal guarantee is valid and binding on Mumma. Defendant contends that he never authorized McClymont to sign his name to the personal guarantee, and as such he cannot be bound to its terms. Alternatively, Plaintiff contends that the principle of agency by estoppel should be applied to the

5

facts of this case in order to bind Mumma to the personal guarantee.  We shall discuss the applicability of these principles of agency in turn.

Express agency is proven by "(1) the manifestation by the principal that the agent shall act for him; (2) the agent's acceptance of the undertaking; and (3) the understanding of the parties that the principal is to be in control of the undertaking." *Basile v. H&R Block, Inc.*, 563 Pa. 359 (2000).  Plaintiff contends that the exchange between Mumma and McClymont over the telephone demonstrates that McClymont had express authority to sign the credit application on Mumma's behalf.  We disagree.

To review, McClymont testified that during the telephone conversation between Mumma and McClymont concerning the credit application, McClymont suggested to Mumma that "I could sign your name," to which Mumma, rather incredulously, responded "you would sign my name?"  McClymont then responded, "yeah, I could sign your name."  At his deposition and at trial, McClymont did not testify that Mumma told him directly to sign his name to the credit application, but that McClymont was "under the impression that he was willing to allow me to sign his name."  Thereafter, McClymont signed the credit

application and faxed the same to York.[4] At trial Mumma testified that he did not recall ever having a conversation with McClymont about a McDermitt credit application or personal guarantee, although he did recall instructing McClymont not to complete a credit application with York for Kimbob, because Kimbob was not purchasing products from York at that time. Based on the evident discrepancy in these facts, we find that the first element of express agency has not been established, that being "manifestation by the principal that the agent shall act for him." This vague exchange between Mumma and McClymont as testified to by McClymont is simply not a "manifestation" by Mumma that McClymont was to act for him. Nor is the third element of express agency established here – "the understanding of the parties that the principal is to be in control of the undertaking." In fact, by McClymont's testimony, the signing of Mumma's name to the credit application and personal guarantee by McClymont was manufactured entirely by McClymont, not Mumma. In our view, McClymont, who was employed by Mumma for only a few weeks at the time of the circumstances in question, acted more like an agent that had "gone rogue" rather than an agent that

---

[4] There was also testimony from McClymont that he "thought" Mumma instructed him to sign in pencil and to leave the "Jr." off of the end of his signature. Mumma denies that he ever gave McClymont this instruction. In the face of Mumma's denial about this exchange, and McClymont's somewhat confused account of the events that took place during the telephone call, we reject McClymont's testimony and any import associated to it by Plaintiff.

was expressly authorized to act on his principal's behalf. Accordingly, we reject the Plaintiff's contention that McClymont acted with express authority when he signed Mumma's name to the credit application and personal guarantee.

Thus, the only way York can bind Mumma to the personal guarantee contained in the credit application is by application of the doctrine of agency by estoppel. To establish agency by estoppel under Pennsylvania law, (1) there must be negligence on the part of the principal in failing to correct the belief of the third party concerning the agent; and (2) there must be justifiable reliance by the third party. *Juarbe v. Philadelphia*, 431 A. 3d 1073, 1079 (Pa. Super. 1981)(citation omitted); *Field v. Omaha Standard, Inc.*, 582 F. Supp. 323, 328 (E.D. Pa. 1983). Under the facts of this case, we do not find that York justifiably relied upon the faxed credit application and personal guarantee with Mumma's signature.

Given the long-standing pathology between the parties concerning McDermitt's failures to pay and York consequently putting the account on hold, York was not justified in relying on the faxed credit application received from McDermitt. Specifically, Patterson testified that Mumma had refused to previously sign previous applications and had returned applications to York with the personal guarantee language crossed out. Further, McClymont had previously inquired of Patterson if he could sign the credit application and personal guarantee as

8

"controller" since Mumma would not sign the document, and as noted Patterson informed him that he could not. Given all of this, Patterson should have had appropriate skepticism when she received the signed credit application and personal guarantee via facsimile, yet she never requested that the original signature be forwarded to York's offices. This utter lack of due diligence dooms an estoppel claim. Based on all of the foregoing, we simply cannot find that York's reliance on the receipt of a faxed signed credit application and personal guarantee was justifiable.[5]

Accordingly, based on the foregoing analysis, we find that McClymont was not acting as Mumma's agent when he signed the 2009 credit application with personal guarantee. Thus, Mumma is not personally responsible for McDermitt's breach of contract resulting from its failure to pay York for materials supplied to McDermitt. York's case is premised on facts that it implies raise inferences that Mumma nefariously engineered a scheme to continue McDermitt's credit by deluding York as to the guarantee. However in reality York asks us to conclude

---

[5] Additionally, we do not find that Mumma was negligent in failing to correct York's mistaken understanding. First, Mumma testified was not even aware that McClymont signed and forwarded the credit application to York. Second, although Patterson had informed Mumma that the account would be on hold until he signed the application, given the longstanding relationship between the parties that involved multiple instances of non-payment, held accounts, and requests for credit that were signed without personal guarantees, it was not unreasonable for Mumma to believe the account was reinstated without having him sign the most recent credit application and personal guarantee.

9

this by speculating and making quantum leaps in its favor.  This we will not do. An appropriate Order shall issue wherein we enter judgment in favor of the Defendant.